**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ARTHUR EDMONSON, ) | |
|       Petitioner, ) | |
| ) | No.    09-cv-2073 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| RICK HARRINGTON, Warden, ) | |
|       Menard Correctional Center,[1] ) | |
|           Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* petitioner Arthur Edmonson is an inmate in the custody of the Illinois Department

of Corrections.  He is serving a 120-year sentence for convictions on counts of first degree

murder, attempted first degree murder, and aggravated kidnapping.  He has petitioned the court

under 28 U.S.C. § 2254 for a writ of habeas corpus, arguing that his conviction was the result of

violations of his Fourth Amendment right against illegal search and seizure, his Fourteenth

Amendment right to due process, and his Sixth Amendment right to effective assistance of

counsel.  For the following reasons, the petition is denied.

**BACKGROUND**

**I.**      **Trial Court Proceedings**

Edmonson has not directed the court to clear and convincing evidence that the state

court's factual determinations were incorrect.  Therefore, the court adopts them for purposes of

reviewing his habeas petition.  *See* 28 U.S.C. § 2254(e)(1); *Woolley v. Rednour,* 702 F.3d 411,

---

[1]Rick Harrington, the current warden of the Menard Correctional Center, is substituted as
the respondent.  *See* Rule 2(a) of the Rules Governing Section 2254 Cases; Fed. R. Civ. P. 25(d);
*Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004).

426-27 (7th Cir. 2012). The state court's factual determinations were set out in *People v. Edmonson*, No. 1-04-294 (Ill. App. Ct. June 27, 2005) (Respondent's Ex. D), and the facts relevant to the petition are summarized here. The court shall also include additional testimony offered at trial as noted.

Tyrece Anderson and 12-year-old Latrell Washington went for a ride in a stolen car on the afternoon of July 1, 2001. Shortly after parking the car, a black Lexus with five men inside pulled up beside Anderson and Washington. One of the men exited the Lexus, hit Washington in the face with a gun, and forced him into the Lexus. Anderson ran from the scene, but the men chased after him in the Lexus and one of the men began shooting at him. A bullet grazed Anderson's neck, but the men in the Lexus eventually drove off and Anderson escaped otherwise unharmed. Later that day, Washington was found in an alley suffering from two gunshot wounds. He subsequently died from the wounds.

The shooting and abduction were witnessed by then-11-year-old Juan Robinson, who saw and heard the confrontation involving Anderson, Washington, and the men in the black Lexus through his kitchen window. Robinson identified petitioner Arthur Edmonson in a police lineup as the man who pulled Washington into the Lexus. Edmonson was arrested on July 3, 2001, and gave a videotaped confession two days later while in custody.

At trial, the state presented evidence that Anderson had also positively identified Edmonson. Detective Brian Johnson testified that Anderson identified Edmonson in both a photo array and a lineup as the man who had shot at him and pulled Washington into the Lexus. In addition, assistant state's attorney Kathaleen Lanahan read jurors a transcript of Anderson's

grand jury testimony, during which he positively identified a picture of Edmonson as the person who shot at him and pulled Washington into the Lexus.

However, at trial Anderson denied identifying Edmonson as the offender, and testified that detectives forced him to sign the back of the picture of Edmonson. He also denied testifying before the grand jury that Edmonson was the offender. Also at trial, Anderson denied ever meeting Edmonson. But a volunteer with the State's Attorney's office testified that on the day before Anderson's trial testimony, Anderson and Edmonson had been placed together in lockup as Anderson was appearing in court in an unrelated case. The trial court allowed prosecutors to present as prior inconsistent statements evidence of Anderson's signed written statement and grand jury testimony in which he positively identified Edmonson.

Jurors convicted Edmonson and the court sentenced him to consecutive sentences of 60 years for first degree murder, 30 years for attempted first degree murder, and 30 years for aggravated kidnapping.

## II.     Direct Appeal

Edmonson received a new attorney on direct appeal. The only issue Edmonson raised on appeal was to challenge the trial court's admission of Anderson's written statement and grand jury testimony as prior inconsistent statements. (Respondent's Exs. A & B). The appellate court affirmed. *People v. Edmonson*, No. 1-04-294 (Ill. App. Ct. June 27, 2005) (Respondent's Ex. D). Edmonson filed a *pro se* petition for leave to appeal to the Illinois Supreme Court, raising as his only issue the trial court's admission of Anderson's prior statements. (Respondent's Ex. E). The petition for leave to appeal was denied. *People v. Edmonson*, 844 N.E.2d 42 (Ill. 2005).

Edmonson also filed a petition for a writ of certiorari with the United States Supreme Court, but that too was denied. *Edmonson v. Illinois*, 547 U.S. 1102 (2006).

## III.    Collateral Proceedings

Next, Edmonson filed a *pro se* postconviction petition under the Illinois Post-Conviction Hearing Act. *See* 725 Ill. Comp. Stat. 5/122-1, *et seq.* For the sake of clarity and consistency, the court will use the same numbering convention that Edmonson used and that the respondent has adopted:

> Claim 1    trial and appellate counsel were ineffective for failing to challenge his convictions for both felony murder and aggravated kidnapping, as he contends aggravated felony is a lesser-included offense;
>
> Claim 2    trial and appellate counsel were ineffective for failing to raise a double jeopardy challenge to his convictions for both felony murder and aggravated kidnapping;
>
> Claim 3    trial counsel was ineffective for failing to seek to suppress his confession on the ground that he was held longer than 48 hours before appearing before a judge;
>
> Claim 4    725 Ill. Comp. Stat. 5/109-1(a) is unconstitutional because it provides no remedy for persons held more than 48 hours without appearing before a judge;
>
> Claim 5    trial counsel was ineffective for failing to object to a prosecutor vouching for his own witnesses during closing arguments;
>
> Claim 6    the jury instruction on accountability relieved the government of its burden to prove each element of his offense beyond a reasonable doubt in violation of the Fourteenth Amendment;
>
> Claim 7    trial counsel was ineffective for failing to challenge the accountability jury instruction; and

Claim 8      appellate counsel was ineffective for the same reason.

(Respondent's Ex. H).

The state circuit court denied each of Edmonson's claims. (Respondent's Ex. I). It found: (1) Edmonson's ineffective assistance of counsel claims regarding lesser-included offenses and double jeopardy were meritless and, furthermore, were waived because he failed to raise them in his direct appeal, *id.* at 4-5; (2) trial counsel's decision not to move to suppress Edmonson's confession based on the length of his detention, or to object to the prosecutor's statements during closing arguments were trial strategy that cannot be challenged on habeas review, *id.* at 5; and (3) Edmonson's arguments that the jury instructions relieved the government of its burden of proof were bald and conclusory, unsupported by record evidence, and therefore subject to summary dismissal, *id.* at 5-6.

Edmonson appealed the denial of his post-conviction petition, but the assigned appellate defender filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). (Respondent's Ex. K). The appellate court agreed with Edmonson's counsel that no issues of arguable merit could be raised on appeal, granted the motion to withdraw, and affirmed the circuit court. (Respondent's Ex. L). Edmonson raised the same eight claims in a petition for leave to appeal to the Illinois Supreme Court, but the court denied the petition. *See People v. Edmonson*, 902 N.E.2d 1086 (2009). Edmonson did not file a petition for a writ of certiorari.

## IV.    § 2254 Petition

Edmonson then filed the instant *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. In it, he raises the same eight numbered claims raised in the postconviction

petition he filed in circuit court. Respondent Rick Harrington moved to dismiss the petition as untimely, but the court denied the motion. *See* Docket # 25.

## DISCUSSION

### I.    Standard of Review

Edmonson filed his petition for a writ of habeas corpus *pro se*, and the court will therefore construe the petition liberally. *See Gomez v. Randle*, 680 F.3d 859, 864–65 (7th Cir. 2012). To be entitled to a writ of habeas corpus, Edmonson's petition must establish that the state court decision he challenges is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of United States Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable").

## II. Edmonson's Claims

### A. Were Trial and Appellate Counsel Ineffective For Failing To Challenge Edmonson's Conviction and Sentence for Both Felony Murder and Aggravated Kidnapping? (Claims 1 & 2)

Edmonson argues that the state court erred when it denied his claim that trial and appellate counsel were ineffective for failing to challenge his conviction for both felony murder and the underlying felony, aggravated kidnapping. Edmonson contends that because aggravated kidnapping was a lesser-included offense to felony murder, he was subject to double jeopardy in violation of the Fifth Amendment. *See United States v. Peel*, 595 F.3d 763, 767 (7th Cir. 2010) ("to punish a person for a lesser-included offense as well as the 'including' offense is double jeopardy unless Congress intended the double punishment."). The state circuit court rejected Edmonson's arguments, concluding that they lacked merit and that Edmonson had waived the claim about trial counsel by not raising it on direct appeal. The respondent argues that the court should deny relief on two grounds. First, he argues that the claims are procedurally defaulted because the state court denied them on an independent and adequate state procedural ground. Second, he argues that the claims lack merit. The court shall address each argument in turn.

#### 1. Procedural Default

A federal court will not review a question of federal law decided by a state court if the state court decision rested on a state procedural ground independent of the federal question and adequate to support the judgment. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012); *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). The doctrine applies to claims "a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 132 S. Ct. at 1316; *see also Moore*, 295 F.3d at 774. Habeas review is barred only if the state court actually

Page 7

relied on the failure to satisfy the procedural requirement as an independent basis for its decision. *See Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Moore*, 295 F.3d at 774. Thus, if the decision of the last state court to which the petitioner presented his federal claims rests primarily on or is interwoven with a resolution of the merits and does not clearly and expressly rely on the procedural default, there is no independent and adequate state procedural ground barring habeas review. *See Harris*, 489 U.S. at 263-65; *Moore*, 295 F.3d at 774; *see also Brooks*, 279 F.3d at 522 ("[W]hen state courts disagree about the right ground of decision, the ruling of the last state court to articulate a reason governs.").

When the last state court to address the petitioner's claim has not identified the basis for its decision, the reviewing court "must make a determination on the record that the state court was presented with. . . . Specifically, [the court] must look to the nature of the disposition and the surrounding circumstances . . . ." *Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009). In *Woods*, the state circuit court dismissed the petitioner's third postconviction petition as frivolous without elaboration, and the appellate court granted counsel's motion to withdraw under *Finley* and affirmed the circuit court's decision, also without elaboration. *Id.* at 375-76. Although the basis for denying the petition could not be discerned from the face of those two state court orders, the Seventh Circuit looked to "all of the surrounding circumstances of [the petitioner's] claims," and determined that the third postconviction petition was denied on the basis of waiver, an independent and adequate state procedural ground. *Id.* at 376-77. Those "surrounding circumstances" consisted of the orders denying the second postconviction petition on the grounds that the claims could have been brought in his first postconviction petition, and were therefore waived. *Id.* at 372.

Page 8

In its decision on Edmonson's postconviction petition, the Illinois Appellate Court stated only that it "found no issues of arguable merit to be asserted in an appeal," and summarily granted counsel's motion to withdraw and affirmed the circuit court. *People v. Edmonson*, No. 1-07-1090 (Ill. App. Ct. June 12, 2008) (Petition App. II). This court shall therefore attempt to discern whether the appellate court's decision was based on an independent and adequate state procedural ground by reviewing the appealed-from order of the circuit court. In that order, the circuit court first addressed the merits of Edmonson's arguments that trial counsel was ineffective. It found that because Edmonson had been convicted of two separate offenses—first-degree murder and aggravated kidnapping—"there is no issue of double jeopardy whatsoever" and Edmonson could not satisfy the prejudice prong of *Strickland*. It then addressed the issue of waiver:

> Furthermore, challenges to trial counsel's representation ordinarily are not cognizable under the Act unless the claim regards a matter outside the trial record. *People v. Britz*, 174 Ill. 2d 163, 178-79 (1996); *People v. Coleman*, 267 Ill. App. 3d 895, 898-99 (1st Dist. 1994). In the instant matter, petitioner's above mentioned claims regarding trial counsel's competence are premised on the trial record and, accordingly, the doctrine of waiver precludes consideration thereof.

(Respondent's Ex. H at 4-5). The court later addressed Edmonson's argument that appellate counsel was ineffective. It found that because trial counsel was not ineffective for failing to raise meritless arguments, appellate counsel was not ineffective for failing to raise the same arguments.

Although the circuit court first addressed the merits of Edmonson's arguments about trial counsel, its merits discussion appears to be an alternative ground for the denial of his claims.

The actual decision to deny relief appears to be waiver given the court's ultimate conclusion that "the doctrine of waiver precludes consideration" of Edmonson's ineffective assistance of trial counsel claim. *Id.* at 5; *Harris*, 489 U.S. at 264 n.10 ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding.") (emphasis in original). Waiver is an independent and adequate state procedural ground. *See Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009). Accordingly, Edmonson has procedurally defaulted his ineffective assistance claim regarding trial counsel. In contrast, the circuit court does not appear to have relied on procedural grounds for denying relief on the claims regarding appellate counsel. The court denied relief based solely on the fact that the arguments Edmonson contends counsel failed to make were meritless and, therefore, did not prejudice Edmonson. Therefore, the claim regarding appellate counsel is not procedurally defaulted.

### 2. Merits

Regardless of the procedural default, both of Edmonson's ineffective assistance claims based on his arguments regarding being a conviction for a lesser-included offense and double jeopardy fail on the merits. To succeed on his claims of ineffective assistance of counsel, Edmonson must show both that his counsel's performance was deficient, and that he suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Brady v. Pfister*, 711 F.3d 818, 823 (7th Cir. 2013). Deficient performance "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Prejudice requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* at 694. To prevail, the petitioner must show both deficient performance and prejudice. *See Brady*, 711 F.3d at 823.

Edmonson contends that trial and appellate counsel were deficient because they failed to argue that his convictions for both felony murder and the underlying felony of aggravated kidnapping ran afoul of the United States Constitution. Specifically, he contends that because the commission of a felony is an element of the offense of felony murder, aggravated kidnapping was a lesser included offense and his conviction of both crimes subjected him to double jeopardy in violation of the Fifth Amendment.

The premise of Edmonson's argument—that he was convicted of felony murder—is incorrect. Jurors were instructed on the three theories of first degree murder on which the government offered proof: (1) Edmonson either intended to kill Washington or knew that his conduct would kill Washington, *see* 720 Ill. Comp. Stat. 5/9-1(a)(1); (2) Edmonson knew that his conduct created the strong probability of death or great bodily harm to Washington, *see* 720 Ill. Comp. Stat. 5/9-1(a)(1); or (3) Edmonson attempted or committed a forcible felony during which Washington was killed, *see* 720 Ill. Comp. Stat. 5/9-1(a)(3). The jury returned a general verdict of guilty of first degree murder.

Under Illinois law, when an indictment alleges three theories of first degree murder and jurors return a general verdict of guilt, there is a presumption that the jury found the defendant guilty of the most serious of the three theories, which is intentional murder. *See People v. Davis*, 909 N.E.2d 766, 776 (Ill. 2009). Thus, jurors are presumed to have convicted Edmonson of intentional, not felony, murder. The trial court acknowledged this when it imposed sentence for intentional murder and merged the remaining counts into the intentional murder count. (Trial

Transcript at 889 [34-10 at PageID#1924]).  Because the commission of an underlying felony is not an element of intentional murder under § 5/9-1(a)(1), Edmonson's argument that he was convicted of both a primary offense and a lesser-included offense in violation of the United States Constitution is meritless.  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("whether there are two offenses or only one [turns on] whether each provision requires proof of a fact which the other does not.").  His attorneys were not ineffective for failing to raise a meritless argument.  *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).  Thus, Edmonson has not shown that the state court decision denying him relief on these claims were either contrary to or an unreasonable application of clearly established federal law.  *See Williams*, 529 U.S. at 404-05.  Accordingly, his request for relief regarding Claims 1 and 2 is denied.

### B.    Was Trial Counsel Ineffective for Failing to Seek to Suppress Edmonson's Confession Based on an Excessively Lengthy Detention? (Claim 3)

Next, Edmonson argues that the state court erred when it rejected his claim that trial counsel was ineffective for failing to seek to suppress his confession based on the length of his detention.  Edmonson argues that trial counsel should have argued that the Fourth Amendment required suppression because the confession occurred after he had been held more than 48 hours without a judicial determination of probable cause.

To show that his trial counsel was ineffective for failing to argue a Fourth Amendment violation, Edmonson must establish an underlying Fourth Amendment violation.  *See Kimmelman v. Morrison*, 477 U.S. 365, 376 (1986) (where "defense counsel's failure to litigate a Fourth Amendment claim competently is the principle allegation of ineffectiveness, [petitioner] must also prove that his Fourth Amendment claim is meritorious . . .").  Although Fourth

Amendment claims are generally not cognizable in a federal habeas petition, *see Stone v. Powell*, 428 U.S. 465, 481-82 (1976), the prohibition does not apply where the Fourth Amendment violation is alleged as the basis of a claim of ineffective assistance of counsel. *See Goins v. Lane*, 787 F.2d 248, 251 (7th Cir. 1986).

Edmonson contends that his rights under the Fourth Amendment were violated when he was held more than 48 hours after his arrest without a judicial determination of probable cause. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (a probable cause determination within 48 hours of arrest or detention is generally prompt for Fourth Amendment purposes); *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) (the Fourth Amendment requires a judicial determination of probable cause promptly after arrest or detention). According to Edmonson, he was arrested at approximately 10:00 p.m. on July 3, 2001, and his confession was obtained more than 48 hours later—and before a judicial determination of probable cause—on the evening of July 5, 2001. (Petition at 10-11).

The United States Supreme Court has never held that a defendant is entitled to the suppression of statements made after an alleged *Riverside / Gerstein* violation. *See Powell v. Nevada*, 511 U.S. 79, 85 n.* (1994) ("Whether a suppression remedy applies [for a *Riverside / Gerstein* violation] remains an unresolved question."). One court in this district has held that the "Supreme Court has left the remedy for a *Gerstein* violation to the states." *United States ex rel. Bailey v. Hardy*, No. 11 C 5650, 2012 WL 182237, at *3 (N.D. Ill. Jan. 23, 2012). Thus, whether Edmonson is entitled to suppression under the Fourth Amendment turns on whether suppression is provided as a remedy under state law. Illinois has long recognized that delay alone does not

render a statement inadmissible but, rather, is merely one factor used to determine whether the statement was voluntary. *See People v. Willis*, 831 N.E.2d 531, 542 (Ill. 2005).

Edmonson has not asserted that his confession was involuntary, or cited to any part of the record or authority to support such a conclusion. Moreover, the trial judge who presided over the motion to suppress Edmonson's confession on the grounds that it was procured through physical coercion found that the confession was voluntary:

> Based on the evidence that has been brought before me today, specifically the testimony of the officer, and my viewing of the videotape, the Court finds that the State has sustained its burden to show that the statements made by Mr. Edmonson were voluntarily made, and were not the subject of any type of physical or mental coercion, and were made in compliance with [the] *Miranda* decision.
>
> Specifically regarding the videotape, it's clear to the Court that at the time that Mr. Edmonson was speaking to the state's attorney, he appeared to be very calm, very comfortable and not under any duress.

Transcript of Suppression Hearing at H–41-42 (Petitioner's Ex. Q [34-6] at PageID#1116-17). In addition, evidence from eyewitnesses Juan Robinson and Tyrece Anderson supported the jury's guilty verdict.

Trial counsel is not required to raise every nonfrivolous argument, and is not ineffective because he failed to pursue an argument with "dismal prospects for success." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Because United States Supreme Court precedent does not require the suppression of statements given following a *Riverside / Gerstein* violation, Edmonson has not shown that counsel was ineffective for failing to move to suppress the statements. Accordingly, Edmonson has not shown that the state court decision was contrary to

or an unreasonable application of clearly established federal law, and his request for relief on

Count 3 is denied.

    **C.**    **Is 725 Ill. Comp. Stat. 5/109-1(a) Unconstitutional Because It**
                  **Does Not Provide a Remedy for Excessively Long Detentions?**
                  **(Claim 4)**

Edmonson argues that the state court erred when it failed to find that 725 Ill. Comp. Stat.

5/109-1(a) is unconstitutional because, under the Fourth Amendment, the statute must provide

for the suppression of his confession. Section 5/109-1(a) codifies the requirements for a timely

judicial determination of probable cause set out in *Riverside / Gerstein*.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, the Constitution does not require that a state prisoner be granted federal

habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure

was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481-82 (1976). Edmonson presented

his Fourth Amendment argument to the state court in his postconviction petition, which the court

denied because it was "satisfied that the evidence supports the conclusion that the defendant's

arrest was lawful." (Respondent's Ex. I at 7). Edmonson has not argued that Illinois failed to

provide an opportunity for the full and fair litigation of his argument that his confession should

have been suppressed under the Fourth Amendment. Accordingly, his Fourth Amendment claim

is not cognizable in his federal habeas proceeding. *Stone*, 428 U.S. at 481-82.

Even if he could assert his Fourth Amendment claim, it would be meritless. As discussed

above, the United States Supreme Court has never held that the Fourth Amendment requires the

suppression of statements obtained after a *Riverside / Gerstein* violation. *See Stone*, 511 U.S. at

85 n.*. As a result, Edmonson cannot show that the state court's failure to find § 5/109-1(a)

unconstitutional was contrary to, or involved the unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *Williams*, 529 U.S. at 404–05. Accordingly, Edmonson's request for relief on Claim 4 of his petition is denied.

> **D.** **Was Trial Counsel Ineffective For Failing to Object to the Prosecutor's Comments During Closing Arguments (Claim 5)**

Next, Edmonson argues that the state court erred when it failed to find his trial counsel was ineffective when he did not object to comments made by prosecutors during closing arguments. Edmonson contends that the comments amounted to impermissible vouching for two of the witnesses against him. The witnesses—assistant state's attorney Karen Kerbis and police detective Brian Johnson—were both involved in obtaining Edmonson's videotaped confession on July 5, 2001. The specific comments cited by Edmonson are as follows:

> Do you remember Karen Kerbis—one of the nicest ladies you'll see in a courtroom . . .

Trial Transcript at 737 (Respondent's Ex. Q [34-10] at PageID#1772).

> There is nothing sweet about this case. But he wants you to believe that we somehow concocted this whole event at the Chicago Police Station. Because you know why folks, because it's fashionable to blame the police—it's fashionable to blame the police. You see it every gosh darn day. So you're going to excuse the murder of a 12 year old kid because it's fashionable to blame the police. That's not the law. That's not the oath that you were sworn to take. And that's certainly not the evidence in this case.
>
> He had an opportunity to cross-examine Brian Johnson, one of the best detectives to ever cross a courtroom floor, one of the most credible, one of the most believable, one of the most honestly likable detectives or witnesses you could see.

*Id.* at 785 (PageID#1820).

> You would have to believe that that [sic] nice lady, one of the
> nicest ladies in the world, one of the most credible witnesses,
> Assistant State's Attorney Karen Kerbis . . .

*Id*. at 787 (PageID#1822).

Courts engage in a two-step inquiry to determine whether a prosecutor's statements during closing arguments violated a defendant's due process rights. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). First, the court determines whether the prosecutor's statements were improper. *Id.* Second, it determines whether the defendant was prejudiced by the statements. *Id.* The following factors are relevant to determining whether the defendant was prejudiced: (1) whether the prosecutor misstated the evidence; (2) whether the remarks implicate specific rights of the accused; (3) whether the defendant invited the remarks; (4) the trial court's instructions; (5) the weight of the evidence against the defendant; and (6) the defendant's opportunity to rebut the remarks. *See United States v. Harper*, 662 F.3d 958, 962 (7th Cir. 2011) (citing *Darden*, 477 U.S. at 181-82).

The statements at issue responded to the theme Edmonson presented at trial that his confession was involuntary and that government witnesses who testify about the confession were not to be believed. Defense counsel introduced the theme during opening statements:

> Arthur Edmonson sitting for two days in a room with no windows.
> Do you know what went on in those two days? Is there a tape of
> the interrogation? When the police get on the witness stand, I'm
> absolutely certain it's going to be sweet and sugar pie, how they
> treated him so nice, how he was so cooperative. He came down
> there voluntarily and just sweet as sugar, just gave it all up. That's
> not real life, and that's not the real facts.

Trial Transcript at 276 (Respondent's Ex. Q [34-7] at PageID#1308). "A prosecutor can certainly respond to an attack on a witness's credibility by arguing that the jury should decide

whether to believe the witness based on what it observed at trial." *United States v. Ochoz-Zarate*, 540 F.3d 613, 618 (7th Cir. 2008). Because the prosecutor's statements responded to Edmonson's theme that testimony that his confession was voluntary was not to be believed, the statements were proper responses to attacks on credibility. *See Ochoz-Zarate*, 540 F.3d at 618.

Even if the statements had not responded to Edmonson's arguments, an evaluation of the factors set out in *Darden* do not support a finding of prejudice. Edmonson does not assert that the statements misrepresented the evidence or implicated one of his specific rights. As discussed above, he invited comments on the credibility of Johnson and Kerbis by suggesting that his confession had been coerced by them. Moreover, the trial court instructed jurors that opening statements and closing arguments by counsel were not evidence, and that any statement or argument not based on the evidence should be disregarded. Trial Transcript at 817 (Respondent's Ex. Q [34-10] at PageID#1852). The weight of the evidence against Edmonson was great given that, in addition to his confession, his conviction was supported by testimony from two eyewitnesses who placed him at the scene of the crime. Finally, Edmonson's counsel had the opportunity to respond to the prosecutor's comments by repeating his theme during closing arguments that Johnson and Kerbis were not credible:

> Now at the beginning of the case I told you—and I think I was proven right—the police would say that that interrogation was just all sweet and sugar. He was cooperative—Detective Johnson—Mr. Edmonson was cooperative and friendly and nice and no problem.
>
> . . .
>
> So what does this tell you? One, it tells you that the police went with the story these two young boys told them that the young man was pistol whipped and then they fed it to [Edmonson]. . . . The

> boys were wrong when he was pistol whipped because they didn't
> see it. [Edmonson] was directed to do that by the police. It's false.
> It's a false confession. Another things in the statement—in
> [Edmonson]'s confession. He never talks about the shooting of
> Tyrece. But wait a minute. That just slipped Karen Kerbis's
> mind? . . . Did he miss that. Did Karen Kerbis just not ask him on
> purpose?

Trial Transcript at 770 (Respondent's Ex. Q [34-10] PageID#1805), 776 (PageID#1811). None

of these factors favor a finding that Edmonson was prejudiced by the prosecutor's statements

during closing arguments.

Because Edmonson has not established an improper statement by prosecutors or prejudice

attributable to the statement, he has not established a violation of his right to due process.

Accordingly, he has not shown that the state court's denial of this ineffective assistance of

counsel claim was contrary to or an unreasonable application of clearly established federal law.

*See Stone*, 86 F.3d at 717 (counsel is not ineffective for failing to raise a meritless argument).

Therefore, Edmonson's request for relief on Claim 5 of the petition is denied.

    **E.**    **Did the Jury Instructions on Accountability Relieve the Government of Its Burden of Proof? (Claims 6 - 8)**

Finally, Edmonson argues that jurors were improperly instructed that they could find him

guilty of murder under a theory of accountability even though the indictment did not allege

accountability. He further argues that he was denied effective assistance of counsel when his

trial counsel failed to object to the offending jury instructions, and again when his appellate

counsel failed to raise the issue on direct appeal.

Under the Fourteenth Amendment, a criminal defendant in state court is guaranteed "the

fundamental right to be informed of the nature and cause of the charges made against him so as

to permit adequate preparation of a defense." *Kaczmarek v. Rednour*, 627 F.3d 586, 596 (7th Cir. 2010). In addition, the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Edmonson contends that prosecutors and the trial court constructively amended the indictment and broadened the charges against him in violation of his rights to due process by allowing argument and instructing jurors based on an accountability theory. *See Lane v. Uchtman*, No. 05 CV 6102, 2009 WL 4788780, at *8 (N.D. Ill. Dec. 9, 2009) ("An indictment that is constructively amended violates the Constitution because the Fifth Amendment requires an indictment of a grand jury to guarantee that the allegations in the indictment match the proof at trial."). Under 720 Ill. Comp. Stat. 5/5-2(c), a person is legally accountable for the conduct of another when "either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of the offense."

Edmonson contends that the decision in *People v. Soto*, 783 N.E.2d 82, 90 (Ill. App. Ct. 2002), supports his position because the court there found that "the state effectively modified the indictment to broaden it from the original offense of first degree murder, to first degree murder under a theory of accountability." However, the Illinois Appellate Court vacated that opinion in light of *People v. Ceja*, 789 N.E.2d 1228, 1247 (Ill. 2003), in which the Illinois Supreme Court recognized that "accountability is not a separate offense, but merely an alternative manner of proving a defendant guilty of the substantive offense." *People v. Ceja*, 789 N.E.2d 1228, 1247 (Ill. 2003). Thus, a defendant may be indicted as a principal for first-degree murder, but be tried

Page 20

and convicted under an accountability theory, without violating the defendant's right to due process. *See United States ex rel. Rolfe v. Hardy*, No. 11 C 3509, 2012 WL 74776, at *2 (N.D. Ill. Jan. 9, 2012) (instructions that allow a defendant charged as a principal to be found guilty of first-degree murder based on the theory of accountability do not violate the defendant's rights to due process); *see also Lane*, 2009 WL 4788780, at *9 (citing *Ceja*, 789 N.E.2d at 1247).

Because the prosecutors and trial court did not constructively amend Edmonson's indictment by instructing jurors on accountability, he has not shown that the state court ruling was contrary to or an unreasonable application of federal law when it rejected his due process and ineffective assistance of counsel claims.

## III.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2)[t]he certificate must identify each substantial constitutional question; (3)[i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4)[a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5)[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated in this order, the court finds that Edmonson has not made a substantial showing of the denial of a constitutional right as he has not demonstrated "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional rights that he deserves encouragement to proceed further." *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons given, Edmonson's petition for relief by writ of habeas corpus [1] is denied. The clerk is directed to enter a Rule 56 judgment in favor of respondent Harrington and against Edmonson, and to terminate this case from the court's docket.

IT IS SO ORDERED
Date: May 20, 2013

Sharon Johnson Coleman
United States District Judge